*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0280p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

EUSEBIA FRIDA KINYASI MWASARU,

        *Plaintiff-Appellant,*

    *v.*

JANET NAPOLITANO, Secretary, Department
of Homeland Security; ALEJANDRO
MAYORKAS, Director, United States Customs
and Immigration Services; DIRECTOR,
UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT; DIRECTOR, UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICE,
DETROIT DISTRICT OFFICE; DIRECTOR,
UNITED STATES EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW, DETROIT
IMMIGRATION COURT; JACK Y. LIN, Field
Office Director, United States Immigration
and Customs Enforcement; and HILARY
RODHAM CLINTON, Secretary, Department of
State,

        *Defendants-Appellees.*

No. 08-2628

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-14066—Denise Page Hood, District Judge.

Argued: July 29, 2010

Decided and Filed: September 1, 2010

Before: GIBBONS and COOK, Circuit Judges; VAN TATENHOVE, District

Judge.*

_____

*The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:** Christopher J. Pooley, LAW OFFICE OF CHRIS POOLEY, ESQ., Avon, Colorado, for Appellant.  Derri T. Thomas, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees. **ON BRIEF:** Christopher J. Pooley, LAW OFFICE OF CHRIS POOLEY, ESQ., Avon, Colorado, for Appellant. Derri T. Thomas, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  Plaintiff–appellant Eusebia Mwasaru appeals the district court's order dismissing her petition for a writ of mandamus. Mwasaru won the diversity visa lottery for fiscal year 2007 but was denied a diversity visa because the United States Customs and Immigration Services ("USCIS") found her ineligible for adjustment of status.  She sought but did not receive administrative review of the USCIS's decision before the expiration of the fiscal year, when her eligibility for the diversity visa would expire.  Four days before the fiscal year ended, she filed a petition for mandamus relief pursuant to 28 U.S.C. § 1361 seeking a court order compelling United States Immigration and Customs Enforcement ("USICE") to transfer her file to an immigration judge ("IJ") to commence removal proceedings, review by the IJ of the denial of adjustment of status, and the issuance of a diversity visa should the IJ approve her application.  Because the district court did not rule on her petition before the fiscal year ended on September 30, 2007, and removal proceedings were commenced against her some weeks later, Mwasaru filed an amended petition seeking a court order compelling the IJ to review her application and compelling the State Department to reserve a 2007 diversity visa for her despite the expiration of the fiscal year. The district court granted the defendants' motion for dismissal, finding that Mwasaru failed to establish jurisdiction under § 1361.

Because Mwasaru's eligibility for a diversity visa expired on September 30, 2007, and the defendants do not have authority to issue a 2007 diversity visa after that fiscal year ended, Mwasaru's petition is moot. Lacking jurisdiction, we dismiss her appeal.

I.

Eusebia Mwasaru, a citizen of Kenya, last entered the United States on January 20, 2006, on an F-1 student visa. On May 2, 2006, while in her last year of a master's program at Duke University, Mwasaru received notice that she had been selected to participate in the 2007 fiscal year diversity immigrant program ("DV-2007"). The notice stated that between 50,000 and 55,000 visas would be available for the approximately 100,000 individuals who received lottery numbers through DV-2007 and that "DV visas may not be issued to DV-2007 applicants after [September 30, 2007]." Mwasaru graduated and lawfully remained in the United States pursuant to a six-month extension of her F-1 student visa for optional practical training ("OPT").

On the day her OPT extension expired, she applied for a second OPT extension. However, because that application was filed after Mwasaru graduated, she was ineligible, and USCIS denied her OPT extension on January 31, 2007. The USCIS notice of decision warned Mwasaru that she had sixty days from the expiration of status (December 13, 2006) to leave the United States. Mwasaru admits that her status "technically" lapsed at this point. However, despite her lack of lawful immigration status, Mwasaru remained in the United States after the grace period and, on April 23, 2007, filed an I-485 application to adjust her status to permanent lawful resident based on her selection for the DV-2007 program. On her I-485 application, she listed her status as "student" and as "I-539 [application to extend/change nonimmigrant status] pending." The record contains no I-539 application, but Mwasaru asserts that prior counsel filed an I-539 application on her behalf requesting a change of status to a B-2 tourist visa.

On May 24, 2007, USCIS sent Mwasaru notice of intent to deny her I-485 application. USCIS found that pursuant to 8 C.F.R. § 245.1(b) Mwasaru was ineligible

for adjustment of status because she was not lawfully present in the United States when she applied. The USCIS gave Mwasaru thirty-three days to present evidence that she had maintained lawful status since entering the United States. According to USCIS, Mwasaru failed to respond, but Mwasaru's counsel maintains that a rebuttal—apparently also lost in the mail—explaining Mwasaru's delay in filing her I-485 application had been filed but admitted that the lost communication did not address the lapse in status. The USCIS's July 20, 2007, notice of decision stated: "[Y]our failure to respond to the request for evidence is deemed to be an abandonment of your application for adjustment of status. Your application may not be approved and is hereby denied." On July 20, 2007, USCIS also served Mwasaru with notice to appear in removal proceedings at a date "to be set." USCIS transferred Mwasaru's file to USICE for future removal proceedings but did not file the notice to appear with an IJ. According to Mwasaru, she requested expedited review of the denial of her I-485 by the Executive Office of Immigration Review ("EOIR") on September 13 and 18, 2007.

On Wednesday, September 26, 2007, Mwasaru filed a petition for a writ of mandamus pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, in federal district court against the Secretary of Homeland Security, the director of USCIS, the director of USICE's Detroit office, and the Secretary of State (collectively, "the defendants"). Mwasaru alleged that USICE failed to forward Mwasaru's I-485 file to EOIR "within a reasonable time" for review in violation of the APA and her constitutional due process rights. Mwasaru sought: (1) an order compelling USICE to transfer her I-485 file to EOIR "immediately" to initiate removal proceedings; (2) an order compelling an immigration court to hold an expedited hearing reviewing the denial of her I-485 application before the DV-2007 program ended on September 30, 2007; (3) an order compelling that court to rule on her I-485 application by September 30, 2007; (4) if the immigration court granted the adjustment of status, an order compelling USCIS to adjust Mwasaru's status to lawful permanent resident; and (5) an order compelling the Department of Homeland Security ("DHS") to either issue Mwasaru a DV-2007 visa or to reserve such a visa for Mwasaru should litigation continue past September 30, 2007. On the same day, Mwasaru filed a

motion for judgment on the pleadings and a request for immediate hearing on the motion.

The district court did not rule on the motion before September 30, 2007, and USICE initiated removal proceedings against Mwasaru on October 17, 2007, by filing the July 20, 2007, notice to appear with EOIR. On November 20, 2007, Mwasaru amended her petition for mandamus to request that the district court issue orders compelling (1) an immigration court to review the denial of her I-485 application, (2) USCIS to adjust Mwasaru's status to lawful permanent resident if that court finds her eligible for adjustment of status, and (3) the Department of State to reserve an immigrant visa under DV-2007 and issue such a visa should USCIS approve her adjustment of status application. Mwasaru also filed an amended motion for judgment on the pleadings and a request for immediate hearing on the motion.

On December 13, 2007, the defendants filed a motion to dismiss for lack of jurisdiction and for failure to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6). They argued that the district court lacked jurisdiction to consider Mwasaru's claim because 8 U.S.C. § 1252(g) barred judicial review of "decision[s] or action[s] by the Attorney General to commence proceedings, adjudicate cases, or execute removal proceedings," the district court lacked jurisdiction under the Mandamus Act because the defendants owed no "clear and undisputable right to the relief sought," and Mwasaru failed to state a claim for which relief could be granted because her case is moot. The district court held a hearing on April 16, 2008, and, on October 10, 2008, issued an order granting defendants' motion to dismiss and denying Mwasaru's motion for judgment on the pleadings. *See Mwasaru v. Chertoff*, No. 07-14066, Op. & Order Granting Def.'s Mot. to Dismiss (E.D. Mich. Oct. 10, 2008) [hereinafter Slip Op.]. The district court found that 8 U.S.C. § 1252(g) did not preclude jurisdiction over Mwasaru's case but that the court lacked jurisdiction to review Mwasaru's claim under either the APA or the Mandamus Act because Mwasaru "failed to demonstrate that the Immigration Court has a 'mandatory or ministerial' duty to conduct an immediate hearing and rule on whether the denial of her Form I-485 was

proper." Slip Op. at 7–10 (quoting *Ryon v. O'Neill*, 894 F.2d 199, 205 (6th Cir. 1990)). Without addressing the mootness issue, the district court granted defendants' motion to dismiss and denied Mwasaru's amended motion for judgment on the pleadings. Slip Op. at 10. Mwasaru timely appealed.

II.

We must first address the threshold issue of mootness "because [a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (internal quotation marks and citation omitted). "[W]e review the threshold jurisdictional question de novo." *United States v. Williams*, 607 F.3d 1123, 1125 (6th Cir. 2010) (citations omitted).

Article III of the Constitution dictates that federal courts may only adjudicate "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988) (citations omitted). "That the dispute between the parties was very much alive when suit was filed . . . cannot substitute for the actual case or controversy that an exercise of [a] Court's jurisdiction requires." *Id.* "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Wedgewood Ltd. P'ship v. Twp. of Liberty*, — F.3d —, 2010 WL 2583410, at *5 (6th Cir. 2010) (quoting *Ford*, 469 F.3d at 504); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Therefore, we must first decide whether the district court could grant Mwasaru the relief that she seeks; that is, whether the defendants could grant Mwasaru a DV-2007 visa if an IJ reviewed the denial of her adjustment-of-status application, found her to be eligible for permanent lawful residence, and ordered her status adjusted. The government argues that such relief is unavailable because 8 U.S.C. § 1154(a)(1)(I)(ii)(II) prohibits the issuance of any diversity visas under the DV-2007 program after the 2007 fiscal year ended. We agree with the government that the defendants are without authority to issue a DV-2007 visa after midnight on September 30, 2007, and thus could not grant her such a visa even if her petition for mandamus were successful.

A.

In order to determine whether this case is moot, we must interpret the diversity visa statute. "In interpreting a statute, [we] look[] first to its plain language." *United States v. Turner*, 465 F.3d 667, 671 (6th Cir. 2006). "[L]egislative intent should be divined first and foremost from the plain language of the statute. If the text of the statute may be read unambiguously and reasonably, our inquiry is at an end." *Chrysler Corp. v. Comm'r of Internal Revenue*, 436 F.3d 644, 654 (6th Cir. 2006) (citations and internal quotation marks omitted). However, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

The diversity visa program makes available up to 55,000 immigrant visas each fiscal year to be awarded to citizens of countries that have had historically low rates of immigration to the United States. *See* 8 U.S.C. §§ 1153(c)(1)(B)(ii), 1153(c)(1)(E)(ii). Approximately 100,000 applicants were selected as DV-2007 participants, or "lottery winners," and so became eligible to apply for one of the 50,000 DV-2007 visas available in 2007. *See* 8 U.S.C. 1153(e)(2). As explained in the notification sent to the lottery winners, those selected for the diversity program are not guaranteed to receive a visa—only the opportunity to apply for one.

Although the State Department administers the diversity visa program, USCIS is the agency responsible for adjudicating I-485 applications for diversity lottery winners already present in the United States. Lottery winners present in the United States may apply for a diversity visa by submitting an I-485 application for adjustment of status to legal permanent resident pursuant to 8 U.S.C. § 1255. *See* 8 C.F.R. § 245.2. Under § 1255, the Attorney General has the discretion to adjust an alien's status if: 1) the alien applies for adjustment of status, 2) the alien is eligible to receive an immigrant visa—in this case, the diversity visa—and is admissible to the United States for permanent residence; and 3) an immigrant visa—again, here the diversity visa—is immediately available to the alien at the time the application is filed. *See* 8 U.S.C. § 1255(a). If, as

the defendants contend, Mwasaru's eligibility for a DV-2007 visa expired at midnight on September 30, 2007, and no DV-2007 visas could be issued after that date, Mwasaru's I-485 application could not be granted because no immigrant visa would be "immediately available" for issuance to her. *See Nyaga v. Ashcroft*, 323 F.3d 906, 913 (11th Cir. 2003) (*per curiam*) ("If Nyaga is no longer eligible to receive a diversity visa, . . . an order requiring the INS to process his application on the merits—only to have their adjustment applications denied by the Attorney General because Nyaga does not meet the 'eligible to receive an immigrant visa' requirement of [8 U.S.C.] § 1255(a)—would not constitute meaningful relief.").

The relevant statute states that "[a]liens who qualify, through random selection, for a [diversity] visa under section 1153(c) . . . shall remain eligible to receive such visa *only through the end of the specific fiscal year for which they were selected*." 8 U.S.C. § 1154(a)(1)(I)(ii)(II) (emphasis added). In furtherance of this statutory limitation, "[t]he State Department has promulgated regulatory provisions that automatically revoke diversity visa petitions and prevent the issuance of [diversity] visas and the allotment of visa numbers after midnight of the final day of the relevant fiscal year." *Nyaga*, 323 F.3d at 909 (citing 22 C.F.R. §§ 42.33(a)(1), 42.33(e), 42.33(g)). Collectively, those regulations make clear that the diversity program expires, with no exceptions, at the end of the fiscal year: "The eligibility for a [diversity] visa . . . ceases at the end of the fiscal year in question. Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility," 22 C.F.R. § 42.33(a)(1); "A petition approved . . . will be valid for a period not to exceed Midnight of the last day of the fiscal year for which the petition was approved. At that time, the State Department will consider approval of the petition to cease to be valid pursuant to [8 U.S.C. § 1154(a)(1)(I)(ii)(II)], which prohibits issuance of visas based upon petitions submitted and approved for a fiscal year after the last day of that fiscal year," 22 C.F.R. § 42.33(d); and "Under no circumstances will immigrant visa numbers be allotted after midnight of the last day of the fiscal year for which the [diversity visa] petition was submitted and approved," 22 C.F.R. § 42.33(f).

We have not yet interpreted whether § 1154 and its accompanying regulations prohibit the issuance of diversity visas after the expiration of the fiscal year, but all four appellate courts that have addressed this question have answered it in the affirmative. *See Mohamed v. Gonzalez*, 436 F.3d 79, 81 (2d Cir. 2006) (*per curiam*); *Coraggioso v. Ashcroft*, 355 F.3d 730, 734 (3d Cir.); *Carillo-Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir. 2003); *Nyaga*, 323 F.3d at 914; *see also Iddir v. INS*, 301 F.3d 492, 501 n.2 (7th Cir. 2002) (declining to address the issue under the mootness doctrine but holding that the statutory time limit of § 1154(a)(1)(I)(ii)(II) precluded mandamus relief because the defendants no longer had a duty to issue diversity visas after the fiscal year ended).

The Eleventh Circuit—the first to address the mootness question—rightly noted that "the resolution of the mootness issue hinges upon [the] interpretation of the phrase 'shall remain eligible to receive such visa' in [8 U.S.C.] § 1154(a)(1)(I)(ii)(II)" because, if "[the alien] is no longer eligible to receive an immigrant visa because fiscal year 1998 has ended, then the Attorney General lacks the power to adjust [his] status under § 1255(a)." *Nyaga*, 323 F.3d at 914. Interpreting the plain meaning of 8 U.S.C. § 1154(a)(1)(I)(ii)(II), the *Nyaga* court concluded that "'shall remain eligible to receive such visa' plainly means that aliens . . . who have been randomly selected to qualify for a visa under the diversity visa program cannot be issued a visa after midnight of the final day of the fiscal year for which they were selected." *Id.* Moreover, "[t]he INS's failure to process [such an alien's] application does not extend [the alien's] statutorily-limited period of eligibility for a diversity visa. 'Eligibility to receive such visa' is unambiguous, and because the phrase is unambiguous, our inquiry must end with the statute's plain language." *Id.*

The *Nyaga* court went on to consider the context of 8 U.S.C. § 1154 and concluded that "the plain meaning of 'shall remain eligible to receive such visa' does not change, nor is it rendered ambiguous." *Id.* at 915. All circuits that have addressed this issue have read the plain language of 8 U.S.C. § 1154(a)(1)(I)(ii)(II) in the same way even in the wake of what may seem to be harsh results, such as when defendants failed to even process the applications of otherwise eligible diversity participants before the

end of the fiscal year.  *See Mohamed*, 436 F.3d at 81; *Coraggioso*, 355 F.3d at 734; *Carillo-Gonzalez*, 353 F.3d at 1079 (holding that "the doctrine of equitable tolling has no application in cases involving the Congressionally-mandated, one-year deadline of the DV Lottery Program").  The Second Circuit addressed the plight of diversity visa applicants, like Mwasaru, whose applications were processed and denied but no administrative or judicial review of that decision occurred before the end of the fiscal year: "Some applicants for diversity immigrant visas were denied them, without a meaningful ability to appeal, as the result of sheer bureaucratic ineptitude or intransigence.  The federal courts, however, do not have the authority to hear these claims because, under the structure established by the applicable statutes, they are now moot." *Mohamed*, 436 F.3d at 81.  Thus, simply put, "[t]he diversity visa program is a limited-time offer," *Mogu v. Chertoff*, 550 F. Supp. 2d 107, 109 (D.D.C. 2008), and "[t]hose not receiving visas must, with sisyphean frustration, go back to the starting line and reapply to the lottery," *Coraggioso*, 355 F.3d at 732.  We find persuasive and adopt the reasoning and conclusions of the Second, Third, Ninth, and Eleventh circuits and thus conclude that Mwasaru's appeal is moot.

B.

Mwasaru argues, however, that she preserved her claim—and her DV-2007 visa—by filing her petition before the September 30 deadline.  In so arguing, she relies on *dicta* in *Coraggioso* and two district court decisions in which diversity applicants' mandamus petitions were found not to be moot despite the termination of the fiscal year. *See Basova v. Ashcroft*, 373 F. Supp. 2d 192 (E.D.N.Y. 2005); *Przhebelskaya v. U.S. Citizenship & Immigration Servs.*, 338 F. Supp. 2d 399, 402 (E.D.N.Y. 2004).  Mwasaru misconstrues the *dicta* in *Coraggioso*, and the district court cases are both distinguishable on the facts.

Mwasaru relies on the following text from *Coraggioso*: "Had Coraggioso sought relief prior to the expiration of the 1998 fiscal year, our analysis may have been different. . . ."  355 F.3d at 734 n.8.  However, the court continued: "'It would be a different case *had the district court ordered the INS to adjudicate the appellants' status*

while the INS maintained the statutory authority to issue the visas.'" *Id.* (quoting *Iddir*, 301 F.3d at 501 n.2) (emphasis added). Thus the *Iddir* and *Coraggioso* courts found that it is the issuance of a court order before the end of the fiscal year that preserves jurisdiction because "the INS would be on notice to reserve visas and must complete the task, as ordered, before time expires." *Iddir*, 301 F.3d at 501 n.2. These courts reasoned that "[a]llowing the INS to claim inability to issue visas at that point would impinge the authority of the court." *Id.*; *Coraggioso*, 355 F.3d at 734 n.8. In so finding, the *Coraggioso* and *Iddir* courts did not—as Mwasaru argues—hold that the filing of *a petition seeking mandamus relief* before the fiscal year can extend the one-year deadline, but rather that the filing of *a court order* might extend that deadline. *See Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 387 (7th Cir. 2003) (finding that the *Iddir* court "recognized that the case would have been different if it had been filed before the end of the visa year, while the INS still had statutory authority to issue the visa, *and if the district court had acted within that time period*" (emphasis added)).

Mwasaru's reliance on *Przhebelskaya* and *Basova* as authority that her "prompt" filing preserved her claim is similarly unpersuasive. First, *Przhebelskaya* is irrelevant because it presented the same procedural posture that was discussed by the *Coraggioso* and *Iddir* courts—that is, the court held that the case was not moot because the plaintiffs had filed the complaint prior to September 30 *and* a court had granted an order compelling defendants to adjudicate their applications before September 30. *Przhebelskaya*, 338 F. Supp. 2d at 405. Second, although *Basova* held that filing a complaint prior to the end of the fiscal year avoided mooting the case, *Basova* was issued by the United States District Court for the Eastern District of New York, and, therefore, was effectively overruled by *Mohamed*, the subsequent Second Circuit case holding that such cases are moot. *See Mohamed*, 436 F.3d at 81.[1]

---

[1]Furthermore, upon reconsideration, the district court in *Basova* vacated the opinion upon which Mwasaru relies and granted the defendants' motion to dismiss after the defendants produced evidence demonstrating that all diversity visas for the relevant fiscal year had been distributed by September 30. *See Basova v. Ashcroft*, 383 F. Supp. 2d 390 (E.D.N.Y. 2005).

Moreover, *Przhebelskaya* and *Basova* are distinguishable on the facts. In neither case had USCIS or its predecessor, the Immigration and Naturalization Service ("INS"), issued a formal denial on the merits of the plaintiffs' adjustment-of-status applications. In *Basova*, the government failed to issue *any* decision on the I-485 applications before the September 30 deadline. *See Basova*, 373 F. Supp. 2d at 197. In *Przhebelskaya*, the government approved the I-485 applications before September 30, but failed to issue the visas before all of the diversity visas for that year had been assigned. *See Przhebelskaya*, 338 F. Supp. 2d at 402 (stating that the defendants had adjudicated the applications in the plaintiffs' favor only after all but one diversity visa had been used, forcing the denial of the two derivative applications). However, in Mwasaru's case, the government promptly adjudicated—and denied—her application for a diversity visa *on the merits* before the September 30 deadline. In fact, USCIS provided her with the opportunity to submit additional information and rebut the agency's finding that she was ineligible, an opportunity that she did not seize. Because of this procedural posture, Mwasaru was forced to request the district court to compel USCIS to transfer her notice to appear to EOIR so that she could file a motion to reopen her adjustment-of-status application rather than to request that USCIS adjudicate a still-pending I-485 application or issue a visa already approved. This was not the question before the courts in *Basova* and *Przhebelskaya* and those cases are, therefore, inapposite and cannot save Mwasaru's petition.

III.

For the foregoing reasons, we hold that § 1154 rendered Mwasaru ineligible for a DV-2007 visa as of midnight on September 30, 2007, that, therefore, she is likewise ineligible for adjustment of status under § 1255 because no visa is "immediately available." Mwasaru's petition for mandamus is consequently now moot. We therefore lack jurisdiction and dismiss Mwasaru's appeal.