RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0156p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

W6 Restaurant Group, Ltd et al.,

    *Plaintiffs-Appellants*,

  *v.*

Kelly Loeffler et al.,

    *Defendants-Appellees*.

No. 24-3483

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:21-cv-02361—Bridget Meehan Brennan, District Judge.

Argued:  March 18, 2025

Decided and Filed:  June 9, 2025

Before:  MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:**  Melissa Z. Kelly, TUCKER ELLIS LLP, Cleveland, Ohio, for Appellants.  Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**  Melissa Z. Kelly, Manju Gupta, TUCKER ELLIS LLP, Cleveland, Ohio, for Appellants.  Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

─────────────

## OPINION

─────────────

KAREN NELSON MOORE, Circuit Judge.  Fifteen Ohio and Florida restaurants and bars challenge the Small Business Administration's operation of a COVID-19 relief program.

Whatever the merits of that challenge, it is now too late to grant any effectual relief. As the district court correctly held, this case is moot. We AFFIRM.

## I. BACKGROUND

One year into the COVID-19 pandemic, following widespread government shutdowns, Congress enacted an array of grant programs to help small businesses survive. As part of the American Rescue Plan Act of 2021 ("ARPA"), Congress established a $28.6 billion Restaurant Revitalization Fund ("RRF") to support restaurants and bars. 15 U.S.C. § 9009c(a)(4), (b)(2)(A). Congress assigned the Small Business Administration ("SBA") to operate the program. *Id.* § 9009c(a)(1), (c)(1).

To qualify for funding, applicants needed to demonstrate that they were suffering pandemic-related revenue loss and that "the uncertainty of current economic conditions [made] necessary the grant request to support the ongoing operations" of the business. *Id.* § 9009c(a)(7), (c)(2)(A)(i). Grants could be used "[d]uring the covered period" for "expenses incurred as a direct result of, or during, the COVID-19 pandemic," including payroll, rent, utilities, and sick leave. *Id.* § 9009c(c)(5). The covered period lasted from February 15, 2020, through March 11, 2023. *See id.* § 9009c(a)(3).[1] If a grantee "fail[ed] to use all grant funds or permanently cease[d] operations on or before the last day of the covered period" the grantee was required to "return to the Treasury" any unexpended funds. *Id.* § 9009c(c)(6). Congress instructed the SBA to "award grants to eligible entities in the order in which applications are received." *Id.* § 9009c(c)(1). One important exception applied: the statute instructed the SBA to give priority during the first twenty-one days to small businesses owned and controlled by women, veterans, or socially and economically disadvantaged groups. *Id.* § 9009(c)(3)(A).

The SBA began accepting grant applications on May 3, 2021. R. 86 (3d Am. Compl. ("TAC" or "operative complaint") ¶ 34) (Page ID #708).[2] The program was immediately

---

[1]The statute authorized the SBA to extend the covered period to March 11, 2023, at the latest, and the SBA did so.

[2]Because this case was decided on a motion to dismiss, the operative complaint's factual allegations are assumed to be true.

oversubscribed.  By the time the SBA closed the application portal on May 24, 2021, the agency had received at least 303,000 applications seeking more than $69 billion in grants.  *See id.* ¶¶ 36– 37 (Page ID #708–09); R. 86-1 (Decl. of Vanessa K. Piccioni ("Piccioni Decl.") ¶ 7) (Page ID #722).[3]  Although the SBA accepted applications from all entities beginning on May 3, 2021, the agency processed only priority applications for the first three weeks that the program was open. R. 86 (TAC ¶ 35) (Page ID #708).  Subject to the priority period, the SBA began processing applications in the order in which they were received, but approved applications in the order in which processing was completed, resulting in some simpler applications receiving awards before more complicated ones were complete.  *Id.* ¶ 46 (Page ID #710); *see* R. 86-1 (Piccioni Decl. ¶ 8) (Page ID #722).  On May 27, 2021, a panel of this court concluded that the priority-application processing scheme was likely unconstitutional.  *Vitolo v. Guzman*, 999 F.3d 353, 363–65 (6th Cir. 2021).  "By that time, however, [the] SBA had already distributed a large majority of RRF funds to priority applicants."  R. 86 (TAC ¶ 40) (Page ID #709).

The SBA closed the RRF on July 2, 2021, after exhausting the fund.  *Id.* ¶ 41 (Page ID #709).  However, in November 2022, the SBA announced that it had recovered $83.4 million in RRF funds that it would reallocate to applicants.  *Id.* ¶ 43 (Page ID #710). The SBA did not take priority status into account when reallocating funds. R. 86-1 (Piccioni Decl. ¶ 17) (Page ID #724).  "[T]he funds were allocated to 'Fully Approved' applicants in the order in which their applications were submitted."  *Id.*; *see* R. 86 (TAC ¶ 45) (Page ID #710).  On June 3, 2023, Congress "permanently rescinded" "[t]he unobligated balances of amounts made available by" the RRF "as of the date of enactment of [the rescission act]."  Fiscal Responsibility Act of 2023, Rescission of Unobligated Funds §§ 1, 52, Pub. L. 118-5, div. B, tit. I, 137 Stat. 10, 23, 28 (2023) ("FRA").

Plaintiffs, fifteen restaurants and bars located in Ohio and Florida, which did not qualify for priority processing, submitted their applications on the first day that the application portal opened.  R. 86 (TAC ¶ 64) (Page ID #713).  They allege that their applications were not

---

[3]The declaration of Vanessa K. Piccioni, Director of the SBA's National Guaranty Purchase Center, attached to Plaintiffs' TAC, was initially submitted by the SBA in opposition to a temporary-restraining-order application in the U.S. District Court for the District of Columbia.  *See* R. 86-1 (Piccioni Decl. ¶ 1) (Page ID #721); *Chef Time 1520 LLC v. Small Business Admin.*, No. 1:22-cv-3587 (D.D.C. filed Dec. 9, 2022) (ECF No. 14-1).

processed in the order that they were received. *Id.* ¶¶ 66–72 (Page ID #713–14). Rather, other businesses who submitted later applications were considered first either because those applicants received priority pre-*Vitolo* or because their applications were less complicated. *Id.* By the time the fund closed on July 2, 2021, Plaintiffs had not received any decision on their applications. *Id.* ¶ 68 (Page ID #713). They also did not obtain any money during the 2022 reallocation. *Id.* ¶¶ 48–49 (Page ID #711).

Plaintiffs filed suit on December 17, 2021. Their theory of the case has evolved over time. Whereas initially Plaintiffs alleged violations of their constitutional rights under *Vitolo*, now Plaintiffs allege that the SBA acted contrary to law under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. At various points in the litigation, Plaintiffs sought emergency relief requiring the SBA to set aside funds in case they prevailed. The district court denied such relief.

The operative complaint sets out two claims. First, Plaintiffs assert that the SBA's decisions to process and pay applications "not in the order in which they were received" violates the APA because it runs contrary to the statute's mandatory processing order. R. 86 (TAC ¶¶ 78–86) (Page ID #715–16). Second, Plaintiffs assert that the SBA violated the APA by "fail[ing] to develop and implement policies and procedures" to recover improperly awarded RRF grants as purportedly required by the statute and program guidance. *Id.* ¶¶ 87–92 (Page ID #716–17). For relief, Plaintiffs seek an order enjoining the SBA from closing the RRF until all applications are adjudicated and all funds improperly granted to applicants are returned and redistributed pursuant to the statute. *Id.*, Prayer for Relief ¶ 1 (Page ID #717). Plaintiffs also seek an order compelling the SBA to continue processing all applications in the order in which they were received, to develop and implement policies for seeking the return of grant funds, to enforce provisions of ARPA that mandate the return of funds under certain circumstances, to distribute returned funds to applicants in the proper order, and to require the SBA to certify ongoing compliance to the district court. *Id.*, Prayer for Relief ¶ 2 (Page ID #717).

The SBA moved to dismiss the operative complaint for lack of subject-matter jurisdiction and failure to state a claim. R. 90-1 (Mem. of L. Supp. Defs.' Mot. to Dismiss at 1) (Page ID #750). Plaintiffs opposed and moved for early jurisdictional discovery, asserting a need for information about the SBA's plans to recoup and redistribute funds. R. 93 (Pls.' Resp. in Opp'n

to Defs.' Mot. to Dismiss) (Page ID #782); R. 94 (Pls.' Mot. for Jurisdictional Disc.) (Page ID #804–10). Attached to the motion for jurisdictional discovery were two reports written by the SBA's inspector general concluding that the SBA had awarded millions of dollars to potentially fraudulent applicants and had failed to adequately monitor grant recipients to ensure that the funds were properly used or returned. *See* R. 94-1 (July 5, 2023, OIG Report) (Page ID #814); R. 94-2 (Sept. 29, 2023, OIG Report) (Page ID #834). As a result of these investigations, the SBA agreed to follow up and pursue improperly granted or retained funds. *See id.*

The district court denied the motion for jurisdictional discovery because it viewed the dispositive issues in this case as purely legal. R. 104 (Order) (Page ID #950). Then the district court granted the SBA's motion to dismiss for lack of jurisdiction. *W6 Restaurant Grp., Ltd. v. Guzman*, 732 F. Supp. 3d 739, 753 (N.D. Ohio 2024). The district court held that Plaintiffs lacked standing to "request that [the] Court order the SBA to undertake enforcement actions to recover RRF grants provided to ineligible entities." *Id.* at 745. The district court also held that the case was moot for two separate reasons. One, after the "covered period" ended, Plaintiffs could no longer use any granted funds. *Id.* at 750–51. Two, by "permanently rescind[ing]" unobligated funds in the RRF, "Congress essentially closed the RRF." *Id.* at 752–53 (citation omitted). Plaintiffs timely appealed.

## II. STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction can raise facial or factual attacks. *L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Accordingly, when considering a facial attack, the court treats the facts alleged in the complaint as true. *L.C.*, 83 F.4th at 542. A factual attack, by contrast, "challenges the factual existence of subject matter jurisdiction." *Cartwright*, 751 F.3d at 759. When ruling on a factual attack, the court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Id.* at 759. A district court's decision to dismiss claims on a facial attack is reviewed de novo. *L.C.*, 83 F.4th at 542. In a factual attack, we

review the district court's factual determinations for clear error but its application of law to fact de novo. *Id.*

The district court mischaracterized the SBA's jurisdictional arguments as a "factual attack." *W6 Restaurant Group*, 732 F. Supp. 3d at 744. None of the SBA's arguments in its final motion to dismiss—or in this appeal—turn on evidence outside the complaint, such as whether any funds remained in the RRF or what the SBA might have done to claw back funds from ineligible entities. And the district court's decision rested on legal considerations about the type of relief requested and statutory limitations on the SBA's continued operation of the RRF. Hence, we review de novo the district court's decision on the motion to dismiss. We review the district court's denial of jurisdictional discovery under the abuse-of-discretion standard. *A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014).

## III. ANALYSIS

The district court dismissed this case on standing and mootness grounds. We may address jurisdictional issues of standing and mootness in whichever order we choose. *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023). Our analysis begins and ends with mootness.

Article III limits federal courts to adjudicating actual cases and controversies. This "cradle-to-grave requirement . . . must be met in order to file a claim in federal court and . . . to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). We ask whether a plaintiff has standing to bring their claim at the outset of the litigation. *Patton v. Fitzhugh*, 131 F.4th 383, 391 (6th Cir. 2025). The question is whether, when the plaintiff filed their complaint, they had suffered, or were at imminent risk of suffering, a concrete injury caused by the defendant, which could be redressed by a court order. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). As the case progresses, Article III requires us to remain vigilant that the controversy remains alive. *Patton*, 131 F.4th at 391–92. "That the dispute between the parties was very much alive when suit was filed . . . cannot substitute for the actual case or controversy that an exercise of [a] Court's jurisdiction requires." *Mwasaru v. Napolitano*, 619 F.3d 545, 549 (6th Cir. 2010) (alteration in original) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "Thus, when a case at first presents a question concretely affecting the rights of the parties, but—as a

result of events during the pendency of the litigation—the court's decision would lack any practical effect, the case is moot." *Ohio v. U.S. Env't Prot. Agency*, 969 F.3d 306, 308 (6th Cir. 2020). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Patton*, 131 F.4th at 392–93 (quoting *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)).

This case became moot on March 11, 2023, when the RRF program "expired by its own terms." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). ARPA provided that RRF funds could be "use[d]" only "[d]uring the covered period," which lasted from February 15, 2020, through March 11, 2023. 15 U.S.C. § 9009c(a)(3), (c)(5). If a grantee "fail[ed] to use all grant funds or permanently cease[d] operations on or before" March 11, 2023, the grantee was required to "return to the Treasury any [remaining] funds." *Id.* § 9009c(c)(6). In short, even if we ordered the SBA to award grants to Plaintiffs, it would be of no use, because the law would prohibit Plaintiffs from spending the money and would require them to return the funds to the Treasury. The "bill [has] by its own terms bec[o]me a dead letter." *Burke*, 479 U.S. at 364. A ruling in favor of Plaintiffs could not provide "any effectual relief." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). So, this case is moot.

Plaintiffs do not argue that any exception to the mootness doctrine applies. Instead, they resist the conclusion that this case is moot by offering a competing interpretation of the statute. According to Plaintiffs, the requirement to return funds applies only to entities that "actually received grants" before the covered period ended. Appellant Br. at 33. This interpretation is at odds with the plain text of the statute. *See Mwasaru*, 619 F.3d at 549 ("If the text of the statute may be read unambiguously and reasonably, our inquiry is at an end." (citation omitted)). The statute authorizes grantees to spend awarded funds only "[d]uring the covered period." 15 U.S.C. § 9009c(c)(5). This understanding is reinforced by the statute's command that any unexpended funds be returned to the Treasury after the covered period ended. *Id.* § 9009c(c)(6). In any event, if a Plaintiff received a grant, it would become "an eligible entity that receive[d] a grant under this subsection" required to return the awarded funds to the Treasury. *Id.* Plaintiffs point out that the statute was enacted after the covered period began, permitting grantees to use

awarded funds to reimburse expenses incurred a year prior.  True enough.  But it does not follow that a recipient could use funds to reimburse prior expenses once the covered period ended.

We applied mootness principles similarly in *Mwasaru*.  That case concerned the diversity visa program, which allows foreign nationals to obtain legal permanent resident status through a lottery system.  *Mwasaru*, 619 F.3d at 549–50.  Under the statute establishing that program, individuals selected for the program must obtain their visa before the end of the fiscal year for which they were selected.  *Id.* at 550.  Once that date passes, the applicant's eligibility expires, and the government may not issue the visa.  *Id.* at 551.  Under these statutory terms, we concluded that "[t]he diversity visa program [was] a limited-time offer," and the case became moot once that offer expired.  *Id.* (first alteration in original) (quoting *Mogu v. Chertoff*, 550 F. Supp. 2d 107, 109 (D.D.C. 2008)).  Similarly, here, the RRF funds were a limited-time offer.  Now that the covered period has lapsed, we cannot give Plaintiffs any real relief, so this case is moot.[4]

Plaintiffs decry this result as unfair.  *See* Appellant Br. at 33.  We understand.  Plaintiffs have vigorously litigated this case for years and even sought emergency relief in the district court.  Still, we must observe Article III's requirement of an ongoing case or controversy throughout the litigation.  *See Mwasaru*, 619 F.3d at 551.  We are unable to see how our decision would make any "difference to the legal interests of the parties."  *Patton*, 131 F.4th at 393 (quoting *McPherson*, 119 F.3d at 458).  Hence, this case is moot.

## IV.  CONCLUSION

Having concluded that this case was mooted by the expiration of the statute's covered period, we do not reach the SBA's additional arguments about why this case should be dismissed for lack of standing or mootness.  We express no opinion on those arguments or the district court's resolution of them.  Further, because this case is mooted by the purely legal

---

[4]To be sure, the statutory provision discussed here does not impose a direct limitation on the SBA's power to award a grant, nor does it strictly foreclose us from remanding this case to the SBA to consider Plaintiffs' applications.  But as was implicit in our decision in *Mwasaru*, the court's ability to order the government to consider the case when such consideration would be futile does not vitiate the mootness concern.  At this late date, it is "impossible for a court to grant any effectual relief whatever" to the Plaintiffs, even if they did prevail. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted).

considerations discussed above, the district court did not commit any reversible error by denying jurisdictional discovery.  For the foregoing reasons, we AFFIRM the judgment of the district court.