**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ZIXIANG LI; JUN LI; JUN GUO; SHIBAO ZHANG; MING CHANG, on behalf of themselves as individuals and on behalf of others similarly situated,

*Plaintiffs-Appellants*,

v.

JOHN F. KERRY,[*] Secretary of State; UNITED STATES OF AMERICA; JANET A. NAPOLITANO, Secretary of Department of Homeland Security; ALEJANDRO MAYORKAS, Director of Citizenship and Immigration Services; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

*Defendants-Appellees*.

No. 11-35412

D.C. No.
2:10-cv-00798-RAJ

OPINION

---

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

---

[*] John F. Kerry is substituted for his predecessor, Hillary Rodham Clinton, as Secretary of State. Fed. R. App. P. 43(c)(2).

Argued and Submitted
July 9, 2012—Seattle, Washington

Filed March 20, 2013

Before: Stephen Reinhardt, Andrew J. Kleinfeld,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Reinhardt

## SUMMARY[**]

### Immigration

The panel affirmed the district court's dismissal as moot of plaintiffs' complaint alleging that defendants misallocated immigrant visas to eligible applicants in the employment-based third preference category (EB-3) during fiscal years 2008 and 2009.

The panel held that the district court properly dismissed the complaint because there is no live case or controversy about the establishment of visa cut-off dates, and the allocation of visa numbers, in the 2008 and 2009 fiscal years. The panel also held that the district court did not err in dismissing the claims for prospective relief, because plaintiffs did not allege that defendants failed to take discrete actions they were legally required to take.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Reinhardt, concurring, joined fully in the majority's affirmance of the dismissal. Judge Reinhardt wrote separately to note the importance of the significant problem with this country's system of issuing immigrant visas that plaintiffs identify, and to suggest that the opinion should not be viewed as approving of the misallocation of Immigrant visas that plaintiffs describe.

## COUNSEL

Robert Pauw (argued), Gibbs Houston Pauw, Seattle, Washington, for Plaintiffs-Appellants.

Tony West, Elizabeth J. Stevens, Aaron S. Goldsmith (argued), United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

Plaintiffs-Appellants, certain individuals from China seeking permanent residency in the United States, appeal from the district court's dismissal of their claims under the Immigration and Nationality Act (INA) against federal Defendants-Appellees.[1] In their complaint, Plaintiffs allege

---

[1] Plaintiffs-Appellants are Zixiang Li, Jun Li, Jun Guo, Shibao Zhang, and Ming Chang (collectively, Plaintiffs). Defendants-Appellees are John F. Kerry, United States of America, Janet A. Napolitano, Alejandro

that Defendants misallocated immigrant visas to eligible applicants in the employment-based third preference category (EB-3) during the 2008 and 2009 fiscal years. Plaintiffs request that visa numbers be made available to them and other members of their class so that they can obtain visas or adjustment of status before the end of the fiscal year.

We hold that the district court properly dismissed the complaint because there is no live case or controversy about the establishment of visa cut-off dates, and the allocation of visa numbers, in the 2008 and 2009 fiscal years. We also hold that the district court did not err in dismissing Plaintiffs' claims for prospective relief because they did not allege that Defendants failed to take discrete actions they were legally required to take. Accordingly, we affirm the decision of the district court.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case concerns applications for visas by professionals and skilled workers in the EB-3 category. To become eligible for such visas, an alien's employer must first file an application for labor certification with the Department of Labor (DOL), requesting certification that there are no qualified workers in the United States available to fill a relevant job opening. *See* 8 U.S.C. § 1182(a)(5)(A)(i). Once DOL provides such a certification, the employer may file a petition requesting that USCIS approve the alien for a visa in the EB-3 category. *See* 8 C.F.R. § 204.5(a). The date a request for certification is accepted for processing by DOL is called the "priority date." *See* 8 C.F.R. § 204.5(d). Once the

Mayorkas, Department of Homeland Security, and United States Citizenship and Immigration Services (USCIS) (collectively, Defendants).

alien's priority date becomes "current," the alien becomes eligible to be allotted an immigrant visa number, and he or she may file an application for adjustment of status with USCIS, if the alien is then physically located within the United States. *See* 8 U.S.C. § 1255(a).

USCIS has jurisdiction to adjudicate an application for adjustment of status. *See* 8 C.F.R. § 245.2(a)(1). Pursuant to 8 C.F.R. § 245.2(a)(5)(ii), however, USCIS may not approve an application for adjustment of status until the Department of State (DOS) has allocated an immigrant visa number. *See* 8 C.F.R. § 245.2(a)(5)(ii). In allocating visa numbers, DOS must comply with the worldwide and per-country limits on the number of employment-based preference immigrant visas established by Congress. *See* 8 U.S.C. §§ 1151(a)(2) (worldwide limit), 1152(a)(2) (per-country limit). To process these congressionally imposed limits in an orderly manner, the Secretary of State is authorized to "make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year . . . and to rely upon such estimates in authorizing the issuance of visas." 8 U.S.C. § 1153(g).

DOS's Visa Office subdivides the annual number of employment-based visas, taking into consideration per-country limits established by Congress, into monthly allotments. The Visa Office considers several variables in determining how many visa numbers to make available, such as past number use, expected future number use, and estimates of additional USCIS demand. Once the number of available visa numbers has been calculated, DOS allocates numbers to applicants.

The total number of qualified applicants are compared each month with the visa numbers available for the next regular allotment. When the number of qualified applicants in a category exceeds the supply of numbers available for allotment in a particular month, the category is deemed oversubscribed, and DOS creates a visa availability cut-off date for that category. The cut-off date is the priority date of the first qualified alien for whom a visa number was not available. When visas are thus oversubscribed, only persons with a priority date earlier than the cut-off date are entitled to be allotted a visa number.

Plaintiffs brought suit in 2010 on behalf of a class of individuals from China, who are seeking to acquire permanent resident status in the EB-3 visa category. They claim that during the 2008 and 2009 fiscal years, Defendants did not allocate immigrant visas to eligible applicants in the correct order, thereby delaying their applications, and their eligibility for adjustment of status. According to Plaintiffs, DOS's Visa Office also failed to maintain an adequate registration list or to properly monitor USCIS's use of immigrant visa numbers, "in part or in whole because the Visa Office does not have accurate information from USCIS concerning the number of applications pending and concerning USCIS demand for immigrant visa numbers." As a result, the Visa Office allegedly established cut-off dates that allowed EB-3 visas to be made available to individuals from countries other than China before the class members from China, even though the class members had earlier priority dates, and China's EB-3 limit had not yet been reached. Accordingly, "the rest of the world was able to use immigrant visas up to its limit in the [EB-3] category, but the China [EB-3] category was not able to use immigrant visas up to its limit even though there was sufficient demand."

Plaintiffs allege that they and their derivative beneficiaries would have been approved for permanent resident status in fiscal year 2008 or fiscal year 2009 but for governmental errors in allocating visa numbers. As a remedy, Plaintiffs seek an order requiring Defendants to make immigrant visa numbers available for class members so they can obtain immigrant visas or have their status adjusted before the end of the current fiscal year. They also sought an injunction requiring that Defendants take steps to improve the visa number allocation system. For example, Plaintiffs asked the district court to order USCIS to provide complete and accurate information to the Visa Office, and to direct DOS to make public all relevant information contained on its waiting lists.

The district court granted Defendants' motion to dismiss. Because Plaintiffs cited no statutory authority requiring USCIS to participate in the creation of cut-off dates or the maintenance of waiting lists, the district court concluded that Plaintiffs failed to state a claim against USCIS. The district court also found that Plaintiffs' claims regarding the allocation of visa numbers from prior fiscal years were moot because no authority allows visa numbers from previous years to be recaptured, and allocated during the current year. The district court further found that Plaintiffs' claims for prospective relief were moot because they conceded that they did not challenge DOS's process for allocating visa numbers. Plaintiffs timely appealed the district court's decision.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction to review the district court's order pursuant to 28 U.S.C. § 1291. We review de novo the district court's dismissal for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6). *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). We also review de novo the district court's dismissal for mootness and for lack of subject matter jurisdiction. *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 890 (9th Cir. 2007); *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 974 (9th Cir. 2012).

Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only "fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (citation and quotes omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. *Id.* at 678–79; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level. . . ."). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey*, 693 F.3d at 911. Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). A district court's decision to dismiss with prejudice is reviewed for abuse of discretion. *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012). "We may affirm on any basis supported by the record, whether or not relied upon by the district court." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007).

## DISCUSSION

Plaintiffs argue that the district court erred in three ways: (1) by dismissing their claims against USCIS; (2) by holding that it lacked jurisdiction to recapture visa numbers from past years; and (3) by dismissing their claims for prospective relief.

### I. Claims Against USCIS

In their complaint, Plaintiffs alleged a number of causes of action against USCIS. We agree with the district court that Plaintiffs failed to state a plausible claim against USCIS.[2]

---

[2] We note that we consider the complaint as pled in its initial and only form. Plaintiffs neither offered any amendments to their complaint nor contend on appeal that the district court erred in dismissing the complaint *with prejudice*.

In their Second Cause of Action, Plaintiffs allege that USCIS violated INA § 203, 8 U.S.C. § 1153(e),[3] by approving applications for adjustment of status for individuals out of priority date order. Plaintiffs' opening brief states two different theories under which USCIS is alleged to have violated this provision. Plaintiffs first claim that USCIS violated the first subsection of that provision, INA § 203(e)(1), 8 U.S.C. § 1153(e)(1), which requires that immigrant visas be made available in priority date order. Plaintiffs cannot prevail under this theory, however, because it is DOS, not USCIS, that issues immigrant visa numbers. *See De Avilia v. Civiletti*, 643 F.2d 471, 475 (7th Cir. 1981) (stating that DOS is responsible for administering provisions relating to numerical limits on immigration, such as issuing immigrant visas). This statute is silent about the order in which USCIS must approve applications for adjustment of status *after* DOS has allocated immigrant visa numbers. Accordingly, Plaintiffs failed to state a plausible claim against USCIS under the first subsection of that statute.

Alternatively, Plaintiffs contend in their opening brief that USCIS violated the third subsection, INA § 203(e)(3), 8 U.S.C. § 1153(e)(3), which requires that adequate waiting lists be maintained. However, this theory appears to have been raised for the first time on appeal. Nowhere in their complaint or in their response to the government's motion to dismiss do Plaintiffs assert that USCIS had an affirmative

---

[3] The complaint alleges that "USCIS has violated and continues to violate INA § 203(e), 8 U.S.C. § 1153(c)." The reference to § 1153(c) appears to be a scrivener's error. Even if it was not an error, however, Plaintiffs failed to state a plausible claim that USCIS violated § 1153(c), because that subsection relates to the allotment of visas to diversity immigrants, rather than employment-based immigrants. *See* 8 U.S.C. § 1153(c).

duty to participate in the maintenance or creation of waiting lists. Indeed, in their motion for preliminary injunction below, Plaintiffs effectively conceded that their claim under this subsection applies only to DOS. We do not address in the first instance claims not raised below.[4] Accordingly, we hold that the district court did not err in concluding that Plaintiffs failed to state a claim against USCIS under 8 U.S.C. § 1153(e).

Although the district court did not explicitly consider the additional causes of action alleged against USCIS, we affirm the dismissal of these claims as well, based on the insufficiency of Plaintiffs' allegations in the complaint. *See Hall*, 476 F.3d at 686; *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998) ("If support exists in the record, [a] dismissal [for failure to state a claim] may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning.").

In their Third Cause of Action, Plaintiffs contend that USCIS violated 8 U.S.C. § 1255(b) and 8 C.F.R. § 245.2(a)(5)(ii) by approving applications for adjustment of status out of priority date order. Under these provisions, USCIS may not approve an application for adjustment of status *until* DOS allocates an immigrant visa number. *See* 8 U.S.C. § 1255(b); 8 C.F.R. § 245.2(a)(1), (a)(5)(ii). These

---

[4] *See Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1442 (9th Cir. 1994) ("An appellate court will dismiss arguments not raised at the district court unless there are exceptional circumstances."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to make it before the district court. . . . That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.").

provisions are silent about the order in which USCIS must approve applications for adjustment of status *after* DOS has allocated immigrant visa numbers. Accordingly, Plaintiffs failed to state a plausible claim against USCIS for violating 8 U.S.C. § 1255(b) and 8 C.F.R. § 245.2(a)(5)(ii).

Lastly, Plaintiffs allege that USCIS violated the law, and acted arbitrarily and capriciously, "[b]y failing to establish a complete and accurate system for monitoring the priority dates of individuals who are applying for immigrant visas" (Fourth Cause of Action), and "[b]y failing to provide and maintain a system adequate to account for the number of immigrant petitions (Form I-140) and adjustment of status applications (Form I-485) that are pending" (Fifth Cause of Action). These claims appear to be based on 5 U.S.C. § 706(2)(A), which requires a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[5]  5 U.S.C. § 706(2)(A).

Plaintiffs provide no authority, and we can locate none, suggesting that USCIS has a specific duty to maintain such an elaborate system for monitoring priority dates or the number of pending applications. Instead, USCIS's responsibilities are carefully circumscribed and tied to the actions of other agencies. *See, e.g.*, 8 C.F.R. § 245.2(a)(1), (a)(5)(ii) (giving USCIS jurisdiction to adjudicate applications for adjustment

---

[5] To the extent these causes of action are based on 5 U.S.C. § 706(1), which requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," Plaintiffs failed to state a claim because no authority suggests that USCIS failed to perform any discrete actions legally required of it. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010).

of status, but forbidding USCIS to approve adjustment of status until an immigrant visa number has been allocated by DOS).

Plaintiffs essentially ask us to hold that USCIS could be acting arbitrarily and capriciously by failing to create a system, or complying with vague standards, not required by law. We decline their invitation, and we hold that Plaintiffs failed to state a claim against USCIS.**⁶** *See Cal. Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1150–51 (9th Cir. 2009) (discussing when we will overturn an agency's decision as arbitrary and capricious); *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc) (noting that we cannot require an agency to abide by our notions of which procedures are best or most likely to achieve the public good, and that we cannot impose procedural requirements not expressly required by statute).

## II.  Recapture of Visa Numbers from Past Years

The district court also held that it lacked jurisdiction over Plaintiffs' claims seeking to recapture visa numbers from previous fiscal years, because these claims were moot. The district court's decision was correct.

---

**⁶** Plaintiffs attempt to add a claim in their opening brief, not appearing in their complaint, that USCIS violated 8 C.F.R. § 245.1(g)(1). We decline to review whether Plaintiffs presented a plausible claim that USCIS violated 8 C.F.R. § 245.1(g)(1) because none of the narrow circumstances in which we have considered an issue raised for the first time on appeal applies here. *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1053–54 (9th Cir. 2007) (declining to consider Idaho Constitution claim raised for the first time on appeal).

"A claim is moot if it has lost its character as a present, live controversy." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citation omitted). "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir. 1999).[7]

Congress has established annual numerical limits on the number of immigrant visas. *See* 8 U.S.C. §§ 1151 (setting a worldwide limit), 1152 (setting a per-country limit). There are a very limited number of situations when a visa number is returned to DOS for reallocation, such as when an immigrant is deported, when an immigrant does not apply for admission to the United States before the expiration of the visa, and when an immigrant visa is revoked. *See* 22 C.F.R. § 42.51(c). However, even in those situations, DOS must reallocate the visa numbers "within the fiscal year in which the visa was issued." *Id.* There is no statute or regulation authorizing DOS to take a visa number from one year and allocate it to another year. Just as in the diversity visa lottery program, the employment-based visa numbers available in a particular fiscal year expire at the end of the year, rendering

---

[7] *See also Feldman v. Bomar*, 518 F.3d 637, 643 (9th Cir. 2008) (dismissing an appeal as moot because the court lacked power to grant any effective relief since it could not resurrect pigs or retroactively remedy any pain that they might have felt from being shot); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc) (holding that a student's claims for injunctive and declaratory relief from forced participation in graduation ceremony prayers were moot after the graduation ceremony occurred).

moot any claim for a visa number from a prior year.[8]  It does not matter whether administrative delays and errors are to blame for an alien not receiving a visa number on time.[9] Once a visa number is gone, it cannot be recaptured absent an act of Congress.[10]  Any other interpretation of the statute would allow statutory limits on levels of immigration in a particular fiscal year to be exceeded as the result of treating

---

[8]  *See, e.g.*, *Mwasaru v. Napolitano*, 619 F.3d 545, 551, 553 (6th Cir. 2010); *Mohamed v. Gonzales*, 436 F.3d 79, 80–81 (2d Cir. 2006); *Nyaga v. Ashcroft*, 323 F.3d 906, 914–16 (11th Cir. 2003); *cf. Coraggioso v. Ashcroft*, 355 F.3d 730, 734–35 (3d Cir. 2004) (denying petition for review although the petitioner would have been entitled to a diversity visa if the INS had performed its statutorily-mandated duty and timely adjudicated his parents' application); *Carrillo-Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir. 2003) (denying petition for review when an alien was selected for a visa through the diversity immigration visa lottery program, but her eligibility expired before the immigration judge issued a decision on her application for adjustment of status); *Iddir*, 301 F.3d at 493–94, 500–01 (holding that the INS lacked statutory authority to award a visa through the diversity visa lottery program, even though the appellants promptly filled out the necessary forms and INS failed to adjudicate the applications within a year).

[9]  *See, e.g.*, *Mohamed*, 436 F.3d at 81 (affirming dismissal of claims as moot even though "[s]ome applicants for diversity immigrant visas were denied them, without a meaningful ability to appeal, as the result of sheer bureaucratic ineptitude or intransigence"); *Coraggioso*, 355 F.3d at 734–35 (denying petition for review although the petitioner "would have been entitled to a diversity visa (and, hence, permanent resident status) if the INS had performed its statutorily mandated duty and timely adjudicated his parents' DV Program applications").

[10]  On two occasions, Congress expressly authorized DOS to recapture employment-based visa numbers from prior years.  *See* REAL ID Act of 2005, Pub. L. No. 109-13, Division B, § 502, 119 Stat. 231 (2005); American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, § 106(d), 114 Stat. 1251 (2000).

all unused visa numbers from the past as cumulatively available to be allocated at any time.

Another problem with Plaintiffs' alleged causes of action is that some of the visa numbers they seek to recapture have already been allocated to other individuals. Since courts are not time machines, we are unable to order DOS to go back in time and not do something it already did, let alone determine which individuals awarded visa numbers in the past should have their numbers taken away because they should have been awarded to Plaintiffs.

Plaintiffs primarily rely on *Silva v. Bell*, 605 F.2d 978 (7th Cir. 1979) in support of their view that the district court has authority to recapture previously unused visa numbers. *Silva* presented the issue of how to allocate erroneously charged visa numbers among Western Hemisphere applicants on a waiting list. *See Silva*, 605 F.2d at 980. The question was not whether recapture was possible. *See id.*

To the extent the Seventh Circuit assumed, *arguendo*, in *Silva* that visa numbers from past years could be reallocated in a current year, notwithstanding statutory limits on immigration, we respectfully disagree. As the Supreme Court stated in a subsequent case:

> An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare.

*INS v. Pangilinan*, 486 U.S. 875, 884 (1988) (citation omitted). Thus, because employment-based visa numbers expire at the end of a fiscal year, a court cannot order an agency to recapture those numbers contrary to Congress's clear statutory command. *See id.* Plaintiffs' arguments to the contrary are unavailing.

For the foregoing reasons, we hold that the district court correctly concluded that Plaintiffs' claims seeking to recapture visa numbers from past years were moot, and we affirm the district court's dismissal of these claims for lack of jurisdiction.

### III.     Claims for Prospective Relief

The district court concluded that Plaintiffs' claims for prospective relief were also moot because Plaintiffs conceded that they did not challenge the process by which DOS allocates visa numbers. For a different reason, we agree that the district court properly dismissed Plaintiffs' claims seeking prospective relief from DOS under section 706(1) of the Administrative Procedure Act (APA), regardless of Plaintiffs' concession.

"Section 706(1) of the [APA] grants federal courts the power to 'compel agency action unlawfully withheld or unreasonably delayed.' " *Hells Canyon*, 593 F.3d at 932. "This provision serves important interests, but does not give us license to 'compel agency action' whenever the agency is withholding or delaying an action we think it should take." *Id.* "Instead, our ability to 'compel agency action' is carefully circumscribed to situations where an agency has ignored a specific legislative command." *Id.*

We explained in *Hells Canyon*:

> In *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55 (2004), the Supreme Court explained the two primary constraints on our review under § 706(1). First, the Court held that judicial review of actions alleged to be unlawfully withheld or unreasonably delayed extends only to "discrete" actions, such as rules, orders, licenses, sanctions, and relief. Second, the Court held that the purportedly withheld action must not only be "discrete," but also "legally *required*"—in the sense that the agency's legal obligation is so clearly set forth that it could traditionally have been enforced through a writ of mandamus. According to the Court, limiting judicial review to actions that are legally required "rules out judicial direction of even discrete agency action that is not demanded by law." In sum, the Court concluded, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take."

*Id.* (citations omitted).

Here, Plaintiffs seek to compel Defendants to make copies of the waiting lists for visas publicly available, and to waive the fees for Plaintiffs to renew their employment authorizations while waiting for immigrant visa numbers. But Plaintiffs cite no authority suggesting that these are discrete agency actions Defendants are legally required to

take. "[T]he only agency action that can be compelled under the APA is action legally *required*." *SUWA*, 542 U.S. at 63.[11] We have no authority to compel agency action merely because the agency is not doing something we may think it should do. *See Hells Canyon*, 593 F.3d at 932.[12] Because Plaintiffs provide no authority that the future actions they seek to require Defendants to take are required by law, we hold that Plaintiffs failed to state a claim under section 706(1) of the APA, and affirm the dismissal of these claims.[13]

---

[11] *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("But respondent cannot seek *wholesale* improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm."); *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 877 (11th Cir. 2009) ("Systemic improvement and sweeping actions are for the other branches, not for the courts under the APA.").

[12] *See also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543–44 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties. Indeed, our cases could hardly be more explicit in this regard." (citations and quotes omitted)).

[13] Plaintiffs' complaint asserted a claim against DOS under INA § 203(e), 8 U.S.C. § 1153(e), alleging that it was issuing visas out of priority date order, and seeking an injunction to prevent violations of that statute. Plaintiffs do not address their entitlement to that relief on appeal, and we do not address that question. We also hold that the claims of Jun Guo, Shibao Zhang, and Ming Chang are moot in any event because they have already obtained adjustment of status.

**CONCLUSION**

For the foregoing reasons, we affirm the district court.

**AFFIRMED.**

---

REINHARDT, Circuit Judge, concurring:

I join fully in Judge M. Smith's opinion affirming the district judge's dismissal of Plaintiffs' complaint. As the opinion states, Plaintiffs are not entitled to recapture visas from past years, and, as to the rest of their claims, Plaintiffs have failed to adequately plead any action that any Defendant was required, but failed, to take. I write separately only to note the importance of the problem that Plaintiffs identify, and to suggest that, despite our affirmance of the district court's dismissal of Plaintiffs' complaint, our opinion should not be viewed as approving of the misallocation of immigrant visas that Plaintiffs describe.

Plaintiffs have identified a significant problem with this country's system of issuing immigrant visas. In 2008 and 2009, according to Plaintiffs, our nation's immigration authorities wrongfully distributed to citizens of other nations over 40% of the available employment-based, third preference ("EB-3") immigrant visas that, under the applicable statute, should have been made available to individuals from mainland China. These visas—numbering over 2,300—would have permitted applicants from China to live and work in this country as legal permanent residents and to start on a path to United States citizenship at the time intended by Congress. Instead, the government erroneously

gave these visas to individuals from other countries, many of whom had been waiting far less time for the same type of visa than their Chinese counterparts.

The system that produced this error—and the root cause of the problem—is admittedly complex. The employment-based immigrant visa system has numerous steps, requiring coordination between the Departments of Labor, State, and Homeland Security. The problem that Plaintiffs identify appears to stem, at least in part, from the failure of U.S. Citizenship and Immigration Services (USCIS), a part of the Department of Homeland Security, to communicate information to the State Department's Visa Office regarding the number of pending applications for EB-3 visas. USCIS's failure to communicate this information to the Visa Office does not appear to have been intentional; rather, it apparently was the result of its attempts to streamline the processing of applications for adjustment of status. Nevertheless, without accurate information from USCIS regarding the number of pending applicants for EB-3 visas from each country, the Visa Office was unable—for at least two years, and likely for much longer—to ensure that the correct number of immigrant visas were made available to individuals from each country. Plaintiffs, and thousands of others like them, were prejudiced as a result, in that they were required to wait far longer for their visas than other individuals who applied at the same time.

This is not the way that the immigrant visas system was intended to function. The 1965 law that established the system intended beyond doubt that the visas would be issued on a "first-come, first-served" basis. *See* S. Rep. No. 89-748 (1965), *reprinted in* 1965 U.S.C.C.A.N. 3328, 3332. Congress believed that such a system was the *only* fair way

to allocate immigrant visas given the substantial numbers of individuals seeking to immigrate to the United States, *see id.*, and it created a comprehensive statutory scheme to carry out that goal, *see* 8 U.S.C. § 1151 *et seq.* Defendants' actions—whether or not they violate the letter of that statutory scheme, and whether or not they are redressable —are difficult to reconcile with the basic principle upon which that system was created.[1]

The misallocation of visas that Plaintiffs complain of is not, however, the result of the violation of any specific duty, imposed on any specific defendant by Congress and identified as such in the Complaint. It appears, nevertheless, that the failure to effectuate the purpose of the statutory scheme could have been entirely avoided had the Defendants taken more seriously their joint responsibility to ensure the proper functioning of the immigrant visa system. Congress, for example, specifically required the Visa Office to keep a waiting list of "applicants for [immigrant] visas"—a necessary component for the immigrant visa system to function as Congress intended. 8 U.S.C. § 1153(e)(3).[2] It is

---

[1] The "first-come, first-served" principle is, admittedly, limited to some extent by limits on the number of individuals from each country who may receive immigrant visas each year. *See* 8 U.S.C. § 1152(a)(2). The existence of such per-country limits, however, is incidental to the problems that Plaintiffs identify. Plaintiffs allege that, despite overwhelming demand for immigrant visas from Chinese individuals, the number of visas allocated to individuals from China has been far less than even the per-country limit—a result that is irreconcilable even with the minor deviations from a pure "first-come, first-served" system that Congress has accepted.

[2] Without an accurate waiting list, the Visa Office is unable to adequately fulfill its other statutory obligations, including Congress's requirements that (a) its estimates of the number of immigrant visas to

clear, moreover, from Plaintiffs' largely uncontested allegations, that the Visa Office's waiting list was inaccurate, because the Visa Office lacked adequate information from USCIS. Had the Visa Office simply asked USCIS for the necessary information regarding pending applications for immigrant visas—or, conversely, had USCIS simply provided to the Visa Office the full information that office required to create an accurate waiting list—the misallocation of visas that Plaintiffs complain of likely could have been averted.

Our decision largely rests on the conclusion that Plaintiffs failed to identify in their complaint any legal obligation that any particular Defendant was not fulfilling, and thus failed to state a cause of action. It is not entirely surprising, that Plaintiffs failed to do so, given the byzantine nature of the immigrant visa system. Plaintiffs likely found it extremely difficult at the outset of this lawsuit – and despite some efforts on their part before the motion to dismiss was granted – to identify with specificity what errors which agency was making, how or why these errors were causing visas to be misallocated, or, specifically, what legal obligations, if any, USCIS, the State Department, or either or both were failing

---

make available be "reasonable," *see* 8 U.S.C. § 1153(g); (b) immigrant visas be issued in the order that applications were filed, *see* 8 U.S.C. § 1153(e)(1); (c) the number of immigrant visas issued each year not exceed the limit available for each category of visa or country, *see* 8 U.S.C. §§ 1151(a)(2), 1151(d), 1153(b); and (d) the number of immigrant visas issued each quarter not exceed 27% of the yearly total, *see* 8 U.S.C. § 1151(a)(2).

to fulfill.[3]  Equally significant, on appeal, Plaintiffs failed to contend that the dismissal *with prejudice* was improper.

Nevertheless, what is clear is that during 2008 and 2009 (and likely beyond), as a result of either errors or oversights on the part of the responsible agencies, the immigrant visa system did not function in a manner consistent with Congress's intent in creating it.  Although we dismiss Plaintiffs' complaint, our decision should not be read as condoning that unfortunate result.

---

[3] As our opinion states, Plaintiffs raised for the first time on appeal a claim that Defendants' actions violated 8 C.F.R. § 245.1(g)(1); *see also* 8 U.S.C. § 1255(a) (USCIS may adjust the status of a non-citizen only if "an immigrant visa is immediately available to him at the time his application [for adjustment of status] is filed").