RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

TONY RAMSEK, FRANK HARRIS, THEODORE JOSEPH
ROBERTS, and TONY WHEATLY,

>    *Plaintiffs-Appellees*,

　　*v.*

ANDREW G. BESHEAR, Governor of Kentucky, ERIC
FRIEDLANDER, Acting Secretary of the Cabinet for
Health and Family Services, and STEVEN STACK,
Commissioner for the Kentucky Department of Public
Health, in their official capacities only,

>    *Defendants-Appellants*.

⎤
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎥
⎦

No. 20-5749

―――――――――――

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:20-cv-00036—Gregory F. Van Tatenhove, District Judge.

Argued: January 12, 2021

Decided and Filed: March 3, 2021

Before: SUHRHEINRICH, McKEAGUE, and READLER, Circuit Judges.

―――――――――――

## COUNSEL

**ARGUED:** Taylor Payne, OFFICE OF THE GOVERNOR, Frankfort, Kentucky, for
Appellants. Christopher Wiest, CHRIS WIEST, ATTORNEY AT LAW, PLLC, Crestview
Hills, Kentucky, for Appellees. **ON BRIEF:** Taylor Payne, Travis Mayo, Laura Tipton, Amy
D. Cubbage, Marc Farris, OFFICE OF THE GOVERNOR, Frankfort, Kentucky, Wesley W.
Duke, David T. Lovely, CABINET FOR HEALTH AND FAMILY SERVICES, Frankfort,
Kentucky, for Appellants. Christopher Wiest, CHRIS WIEST, ATTORNEY AT LAW, PLLC,
Crestview Hills, Kentucky, Thomas B. Bruns, BRUNS, CONNELL, VOLLMAR &
ARMSTRONG, LLC, Cincinnati, Ohio, Robert A. Winter, Jr., Fort Mitchell, Kentucky, for
Appellees. Matthew F. Kuhn, OFFICE OF THE KENTUCKY ATTORNEY GENERAL,
Frankfort, Kentucky, for Amicus Curiae.

———————————

**OPINION**

———————————

CHAD A. READLER, Circuit Judge.  Over the last year, governments at all levels have employed a range of precautionary measures in an attempt to curb the COVID-19 pandemic.  In Kentucky, Governor Andrew Beshear's pandemic response included instituting a "Mass Gathering Order."  By its terms, the Order prevented groups larger than ten in number from assembling for certain purposes.

Challenging that Order in federal court, plaintiffs alleged that the Order, both facially and as applied, violated their First Amendment rights to free speech and assembly.  Later developments would reveal that, at least in an as-applied context, plaintiffs had been the victims of a textbook First Amendment violation, given Governor Beshear's content-based application of the Order.  For while Governor Beshear discouraged plaintiffs—through means including the threat of prosecution—from holding a mass gathering at the State Capitol to express their views opposing his COVID-19-related restrictions, he at the same time welcomed a large group of Black Lives Matter protestors to the State Capitol, even going so far as to speak to those protestors despite their plain violation of the Order.

On related grounds, the district court preliminarily enjoined enforcement of the Order. But before that decision could be fully litigated before us, Governor Beshear withdrew the Order. That action renders this appeal moot, as we are without a live controversy to resolve.  To the extent plaintiffs claim that a threat of prosecution for their past violations of the Order keeps the broader case alive, we remand the case to the district court to determine what further relief, if any, is proper.

**BACKGROUND**

Kentucky confirmed its first case of COVID-19 nearly a year ago, on March 6, 2020. That same day, Governor Beshear declared a State of Emergency.  *See* Ky. Exec. Order No. 2020-215.  As part of his efforts to combat the emergency, Governor Beshear issued the aforementioned Order prohibiting "mass gatherings."  "Mass gatherings" were broadly defined

to include "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." These activities were completely prohibited under an initial version of the Order. In a revised version, Governor Beshear allowed each of the proscribed activities to proceed so long as there were no more than ten participants. Individuals who failed to comply with the Order were subject to criminal sanctions. *See* Ky. Rev. Stat. Ann. § 39A.990.

While broad in scope, the Order left many activities unaffected. Locations permitted to operate "normal[ly]" included "airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit" along with "typical office environments, factories, or retail or grocery stores[.]" According to Governor Beshear, those activities were exempted because of their "life-sustaining" nature.

1. An incident between Governor Beshear and, as they describe themselves, a group of "opponents of the unconstitutional shutdown," gave rise to this lawsuit. On April 15, 2020, approximately 100 individuals, including Tony Ramsek, gathered on the grounds of the State Capitol to protest Governor Beshear's restrictions ordered in response to the COVID-19 pandemic. The protest coincided with Governor Beshear's daily press briefing held to address developing public health-related issues. Despite the press conference taking place inside the State Capitol, the protestors' voices could be heard in the background.

To prevent interference with future press conferences, the Kentucky State Police restricted the public's ability to access the side of the Capitol building where the Governor delivered his daily briefings. Officers placed barriers around the area and attached a sign stating: "Pursuant to 200 K.A.R. 3:020, the Kentucky State Police has deemed this area a restricted zone. No one is permitted past this point. Failure to adhere to this Regulation may result in Criminal Penalty under K.R.S. 511.070." As an alternative to protesting on Capitol grounds, Governor Beshear's top health advisor authorized protestors to drive to the top floor of a public parking garage to protest while remaining in their cars.

Ignoring both that instruction as well as the Order, Ramsek and others continued to hold in-person protests on and around the lawn of the State Capitol. And Governor Beshear, for his part, did not shy away from expressing his disapproval of those acts. In response to a protest on April 25, Governor Beshear denounced the protestors, referring to their activities as "illegal." During another press conference, Governor Beshear, responding to a reporter asking whether protestors should "expect enforcement," remarked, "we'll see." Nonetheless, Ramsek and others continued to participate in protests on Capitol grounds.

2. As these events were unfolding at the State Capitol, Governor Beshear was entangled in litigation challenging other aspects of the Order. On May 2, 2020, we granted an injunction on appeal to allow faith-based mass gatherings that would otherwise have violated the Order, so long as the gatherers remained in their vehicles. *See Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 616 (6th Cir. 2020) (per curiam). A week later, we granted an injunction that permitted in-person faith-based services that would otherwise have violated the Order. *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (per curiam).

Not long thereafter, Ramsek and a handful of other "opponents of the unconstitutional shutdown" filed suit to enjoin enforcement of the Order preliminarily and permanently to the extent it prohibited protests by more than ten persons on Capitol grounds. According to Ramsek, the Order, both on its face and in application, violated plaintiffs' First Amendment guarantees of assembly and free speech. The Order, Ramsek emphasized, allowed certain kinds of large gatherings, for example, at a shopping mall or an accounting firm, but not at the State Capitol. Ramsek also highlighted the specific protests he and others had engaged in at the Capitol, as well as Governor Beshear's response, which included placing blockades on Capitol grounds and increasing the presence of State Police as well as instructing the protestors to stay in their vehicles in a parking garage. The district court denied preliminary injunctive relief on the ground that Ramsek did not have standing. The district court also denied an injunction pending appeal.

Ramsek appealed those decisions to this Court. We in turn concluded that Ramsek had standing and granted in part his motion for an injunction pending appeal. *Ramsek v. Beshear*, No. 20-5542, at 3, 6 (6th Cir. May 23, 2020) (Order). As we explained there, Ramsek

demonstrated a likelihood of success on the merits, at least in part, because the Order was likely a content-based regulation of speech. *Id.* at 4. We thus enjoined Governor Beshear from prohibiting protesters from gathering for drive-in and drive-through protests. *Id.* at 6. As to in-person protests, however, in light of their unique risks as perceived at the time of appeal, we could not say, "on . . . exceptionally short notice," that such a ban failed strict scrutiny. *Id.* at 5. *But see id.* at 6 (Suhrheinrich, J., concurring in part and dissenting in part) (maintaining that limiting the injunction to in-car protests "does not go far enough in protecting the plaintiffs' rights under the First Amendment" because "Kentucky's citizens should be trusted to exercise their First Amendment rights in a way that adheres to generally applicable public health guidelines" (citations omitted)). We thus vacated the district court's order and remanded the case for additional findings of fact and conclusions of law "concerning a prohibition on in-person protests and whether there are features of large in-person protests that distinguish them from other mass gatherings, such as at retail venues, which the Order permits, and churches, which our prior decisions permit." *Ramsek v. Beshear*, No. 20-5542, at 1 (6th Cir. May 29, 2020) (Order).

3. An intervening series of events thickened the legal plot underlying Ramsek's claims. Less than two weeks after we preliminarily enjoined drive-in and drive-through protests, but before the district court granted the preliminary injunction regarding in-person protests, a protest in support of "Black Lives Matter" took place at the Capitol. During that demonstration, hundreds of individuals gathered on the Capitol lawn. Yet far from attempting to dissuade this group of protestors, Governor Beshear instead attended the rally, even going so far as to speak to the large crowd assembled at the Capitol. And far from raising the specter of prosecution after the fact, Governor Beshear instead tweeted a picture of him standing before the large, non-socially distanced crowd on the Capitol lawn. A second picture showed him reaching over a column to sign an autograph. Neither at the time of the protest nor during the course of this litigation has Governor Beshear asserted that the Black Lives Matter protest was permitted under his Order. Much to the contrary, his top health expert acknowledged that Governor Beshear in fact violated the Order by attending the Black Lives Matter protest.

4. On June 24, the district court extended the preliminary injunction of the Order to in-person protests. *Ramsek v. Beshear*, 468 F. Supp. 3d 904, 921 (E.D. Ky. 2020). Employing

settled First Amendment principles, the court first determined that the Order, on its face, was content-neutral, as the exempted conduct was not expressive in nature. *Id.* at 917–18. While neutral in content, the Order, the district court concluded, was nonetheless not narrowly tailored, *id.* at 918–19, and thus failed intermediate scrutiny. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (holding that content-neutral time, place, and manner restrictions on speech must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication").

Governor Beshear appealed the decision. But before the case could be argued in this Court, the Governor rescinded the Order. In response, we ordered briefing on whether a live controversy exists. On that front, Ramsek argues that the case is not moot because he could still be prosecuted for his prior violations of the Order. As a result, he says, this case is not moot while the statute of limitations has yet to run. Governor Beshear, on the other hand, believes the case is moot because the Order is "off the books," and because he has asserted that he would not enforce the Order against those engaging in expressive conduct. Nonetheless, Governor Beshear asks that we vacate the preliminary injunction. He cites two grounds to support that request. One is that the equities favor vacatur. The other is that "the injunction would continue to have an 'adverse effect' on Defendants and the people of the Commonwealth they represent" were it permitted to stand, a claim Governor Beshear makes despite likewise disclaiming any future attempt to resuscitate the Order.

**ANALYSIS**

1. At the heart of Ramsek's case is a claim that Governor Beshear's Mass Gatherings Order violated his right to assemble and to free speech protected by the First Amendment to the United States Constitution. Those bedrock constitutional guarantees ensure "the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937) (holding that a state may not violate the right to peacefully assemble). Ramsek claims that the Order was unconstitutional on its face, meaning that, in the First Amendment context, he must "demonstrate . . . that a substantial number of instances exist in which the [law] cannot be applied constitutionally." *Speet v. Schuette*, 726 F.3d 867, 873 (6th Cir. 2013)

(internal quotation omitted).   He likewise claims that the Order was unconstitutional in its application in that enforcement of the Order was threatened against him based solely on the content of his speech.

As to the latter claim, Ramsek highlights the fact that while the Order was used as a means to discourage him and his colleagues from protesting at the State Capitol to oppose Governor Beshear's COVID-19-related measures, it was not invoked against Black Lives Matter protestors who engaged in a similar effort, albeit with a different message, one that sought to bring awareness to the use of violence against the Black community.   Notable here is the fact that Ramsek's claims turn on Governor Beshear's very own actions.   At the same time he left open the possibility of an enforcement action against Ramsek and his fellow "anti-lockdown" protestors due to their gathering on Capitol grounds, Governor Beshear personally greeted the Black Lives Matter protestors when they gathered at the Capitol.   In fact, Governor Beshear went so far as to speak to the latter group, and to later promote through social media their protest and his participation therein.   Threatening sanctions based upon the content of a group's political speech is a quintessential violation of the rights of free speech and assembly.

We cannot reach a claim's merits, however, if there is no case or controversy.   *See* U.S. CONST. art. III, § 2.   For instance, if a case is moot, we lack jurisdiction to proceed.   *Ohio v. EPA*, 969 F.3d 306, 308 (6th Cir. 2020) ("[U]nder Article III, the 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974))).   To assess whether a case is moot, we ask "whether the relief sought would, if granted, make a difference to the legal interests of the parties."   *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992))).

Governor Beshear contends that this appeal is now moot in light of his decision to rescind the Order.   In the district court, Ramsek secured a preliminary injunction of the Order, the purpose of which "is to prevent any violation of [Ramsek's] rights before the district court enters a final judgment."   *See Ohio*, 969 F.3d at 309.   Whether Governor Beshear's appeal of the preliminary injunction is moot thus "depends on whether there remains a reasonable possibility

that the [Order] will again become effective in [Kentucky] while this case remains pending in the district court." *See id.* Given Governor Beshear's representations that he has no intention to reinstate the Order (or similar restrictions), the answer is no. With the lifting of the Order, Ramsek has achieved the relief he sought through this litigation—the Order is "off the books," *Pleasant View Baptist Church v. Beshear*, No. 20-6399, 2020 WL 7658397, at *1 (6th Cir. Dec. 21, 2020), and Ramsek is free to protest in groups greater than ten, subject to health and safety precautions. And, critically, we see no reasonable possibility that that the Order will be reinstated while the district court considers any remaining matters.

2. While the appeal of the preliminary injunction decision has been mooted by the Order's withdrawal, that does not necessarily render the entire case moot. After all, mootness as to this appeal may not speak to mootness of the underlying case. *See Ohio*, 969 F.3d at 309 (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394–95 (1981)) (emphasizing "the distinction between mootness as to a preliminary-injunction appeal and mootness as to the case as a whole"). As to the underlying case, Ramsek believes that a live dispute remains. All parties agree that Ramsek violated an executive order, a misdemeanor under Kentucky Revised Statute § 39A.990, which carries a one-year statute of limitations. Ky. Rev. Stat. Ann. § 500.050(2). Believing that a law's repeal does not immunize a past violator from prosecution, Ramsek worries that until that one-year period expires, the threat of prosecution lives on, necessitating final injunctive relief. *Cf.* Ky. Rev. Stat. Ann. § 446.110 (explaining that the repeal of a law does not vacate prior offenses against it).

That worry gives us enough pause to decline to find the entire case moot. We accept Governor Beshear's representation that he will not enforce the Order against Ramsek (or any others who engaged in expressive conduct that violated the Order). But enforcement of the Order to discourage or halt protesting differs from prosecuting one for violating the Order. And it is not clear that Governor Beshear has the authority to control prosecution decisions. The Kentucky State Police seemingly could file a criminal complaint and seek to arrest Ramsek for a past violation on its own accord. *See* Ky. R. Cr. P. (Rcr) 2.02, 2.04. And Kentucky county attorneys, not the Governor, prosecute misdemeanor violations. *See* Ky. Rev. Stat. Ann. § 69.210; *Commonwealth v. Vibbert*, 397 S.W.3d 910, 915 (Ky. Ct. App. 2013) ("As a rule, the

county attorney is responsible for prosecuting all misdemeanors . . . .").  Governor Beshear's commitment, in other words, may not give Ramsek the security he deserves.

It bears noting, however, that as currently postured, the federal courts may not be positioned to grant Ramsek the freedom he seeks from the threat of arrest and prosecution. Neither the Kentucky State Police nor any county attorney in the Commonwealth is a party to this suit.  Given the uncertainty over these various underlying questions surrounding the threat of prosecution, we withhold judgment on whether the case as a whole is moot, whether any amendment to the complaint is appropriate, and whether further injunctive relief is necessary to protect Ramsek's rights.  The district court, in the first instance, can wade through these and any other remaining issues between the parties on remand.  *E.g.*, Compl. at ¶ 98, *Ramsek*, 468 F. Supp. 3d at 904 (requesting attorney fees and costs).

3.  Having concluded that the appeal is moot, we turn to Governor Beshear's request that we vacate the preliminary injunction.  As the Supreme Court has explained in its *Munsingwear* line of cases, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994); *see also United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950).  The *Munsingwear* doctrine serves to prevent a lower-court judgment from having preclusive effect when the merits are unable to be considered on appeal.  *See Radiant Glob. Logistics, Inc. v. Furstenau*, 951 F.3d 393, 397 (6th Cir. 2020) (per curiam).  And according to Governor Beshear, the "vagaries of circumstance" associated with the fluid COVID-19 pandemic required the Order to be lifted, leaving it unfair to allow the injunction to stand despite being mooted.

Two considerations, however, weigh against Governor Beshear's request.  One is that we typically do not vacate a preliminary injunction in that it "has no preclusive effect." *Id.* (quotation omitted).  Another is that equity does not support vacatur when the losing party is the cause of a case becoming moot.  *See U.S. Bancorp Mortg. Co.*, 513 U.S. at 25.  Having lost in the district court, Governor Beshear then withdrew the Order before his appeal could be resolved, vitiating the need for this Court to examine the lawfulness of the preliminary injunction.  With that in mind, it would be unfair to then reward Governor Beshear by vacating

the district court's preliminary injunction ruling, which the Governor asserts is harmful to his interests. *Id.* ("The denial of vacatur is merely one application of the principle that '[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" (quoting *Sanders v. United States*, 373 U.S. 1, 17 (1963))). Governor Beshear, in other words, cannot use his withdrawal of the Order as both a shield to defend (on mootness grounds) against Ramsek's request that we affirm the preliminary injunction, and then as a sword to strike it down through vacatur of the decision in the district court. Because Governor Beshear's action mooted this appeal, he is not entitled to *Munsingwear* vacatur. We therefore decline to vacate the preliminary injunction.

**CONCLUSION**

We dismiss this appeal for lack of jurisdiction, as the appeal is now moot. We remand the case to the district court to decide what further relief, if any, is appropriate.