NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0050n.06

Case No. 22-2117

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>JUSTIN EMIL LINDAHL,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td>O P I N I O N</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Feb 01, 2024
KELLY L. STEPHENS, Clerk

Before: GIBBONS, BUSH, and DAVIS, Circuit Judges.

STEPHANIE DAWKINS DAVIS, Circuit Judge. Justin Emil Lindahl pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 921(a), and 924(a)(2). Lindahl was sentenced to 42 months in custody and three years of supervised release with both standard and special conditions. Once released from custody, Lindahl admitted responsibility for violating several terms of his supervised release. Consequently, he received another term of imprisonment to be followed by a new period of supervised release with conditions virtually identical to those imposed with his original sentence. Among the reimposed standard conditions are two that require Lindahl to (1) live at a residence approved by the probation officer (Standard Condition No. 5), and (2) refrain from communicating with any felon unless he receives prior permission from the probation officer (Standard Condition No. 8). Lindahl appeals the district court's reimposition of Standard Condition Nos. 5 and 8, arguing that as applied, they

prevent him from communicating with his wife, who is a felon. In that regard, Lindahl maintains that the conditions are overbroad and exceed the scope of supervised release conditions provided under 18 U.S.C. § 3583, and that they infringe on his right to familial and intimate association protected under the Due Process Clause of the Fifth Amendment of the United States Constitution.

As explained more fully below, Lindahl's challenge to the reimposed conditions is unripe for review. And to the extent he challenges the enforcement of the conditions pursuant to his original sentence, any such challenge is moot. We therefore AFFIRM the judgment of the district court.

**I.**

Lindahl's underlying conviction stemmed from a 2017 indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession of a controlled substance (crystal methamphetamine) in violation of 21 U.S.C. § 844(a). Lindahl ultimately pleaded guilty to the felon-in-possession-of-a-firearm count and received a sentence of 42 months' imprisonment to be followed by three years of supervised release.

*Supervised Release Conditions.* Once Lindahl completed the custodial part of his sentence, he began his three-year term of supervised release with various conditions. Standard Condition Nos. 5 and 8 provided the following:

> **5.** You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

> ---

> **8.** You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

(R. 31, PageID 135). Relevant here, Lindahl was initially approved to live with his mother-in-law in Vicksburg, Michigan ("Vicksburg residence"), on the condition that "he have no contact with his wife . . . because [Mrs.] Lindahl was actively abusing illegal substances." (R. 48, PageID 199).[1] Months later, Mrs. Lindahl was released from an inpatient drug treatment program to live at the Vicksburg residence. Because of Mrs. Lindahl's impending return, Lindahl agreed to move to his sister's home in Union City, Michigan ("Union City residence"). At the time, the Union City residence "was his only approved residence and the restriction on having contact with [Mrs.] Lindahl remained in place." (*Id.*)

*Violations of Supervised Release Conditions and the Revocation Hearing.* About nine months into his period of supervised release, Lindahl's probation officer filed a petition with the district court alleging ten violations of Lindahl's terms of supervision. The alleged violations included the following: possession and use of fentanyl on multiple occasions; failure to notify his probation officer that he changed his living arrangements from the approved Union City residence back to the Vicksburg residence; non-approved communication with a friend who is a convicted felon; and failure to report contact with law enforcement. According to the petition, "[t]he probation officer informed Mr. Lindahl on multiple occasions that he could not reside at that address due to the fact that his wife, an active drug user and felon, would be living there." (R. 43, PageID 188). The petition also explained that Lindahl was not allowed to live at the Vicksburg residence because "the illegal activity in that home and his wife's drug use did not provide an environment that was conducive to a successful supervised release term." (*Id.* at 188–89).

---

[1] Lindahl was not married when he was first sentenced. But by the time he was released from custody, he had married his fiancée.

Yet, "[Lindahl] made no attempt to contact the probation officer to request a change of residence from his sister's residence in Union City." (*Id.* at 189).

The district court held a supervised release violation hearing where the parties reached an agreement to dismiss violations 4, 5, and 10—failure to live at his approved residence, communication with a convicted felon (his friend), and possession of fentanyl on or about September 7, 2022—in exchange for an admission of responsibility for the remaining violations. After Lindahl admitted responsibility on the record, the district court shifted to the sentencing phase of the hearing. The defense then requested that "once [Lindahl] is put back on supervised release that there [be] no condition barring him from interacting with his family." (R. 62, Page.ID 287). According to the defense, the probation officer notified Lindahl "that he could not live at the address with his wife, and he was also told that he could not call his wife." (*Id*. at 288). Defense counsel also explained that he realized removing the conditions prohibiting Lindahl from having contact with a felon and living at an unapproved residence was "a sensitive issue because his wife also has issue[s] . . . with past crimes and particularly with substance abuse as well." (*Id*. at 287–88). Nevertheless, counsel argued that "the right to associate with one's family is particularly important," and that Lindahl "would really like to have conditions where he could still see his wife and his family." (*Id.* at 288).

The district court revoked Lindahl's supervised release term and sentenced him to serve another 12 months in custody to be followed by another 24 months of supervised release. Despite Lindahl's argument for relief from Standard Condition Nos. 5 and 8, the district court reimposed both conditions. The court concluded that it would not "prejudge" Lindahl's ability to contact his wife upon release but left open the possibility, explaining that "the way that an individual like Mr. Lindahl or his wife get [the conditions] set aside is by demonstrating compliant clean and sober

behavior over an extended period of time." (*Id.* at 300). At present, Lindahl remains in custody. But once released, his new term of supervised release contains the same standard conditions that applied to his sentence for the underlying conviction—including Standard Condition Nos. 5 and 8. Lindahl timely appealed.

## II.

Considering the district court's "front-row seat at the proceedings and its sentencing experience," we review the imposition of supervised release conditions for abuse of discretion. *United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010).

## III.

On appeal, Lindahl maintains that the district court's imposition of Standard Condition Nos. 5 and 8, as applied, constrains his ability to communicate and cohabitate with his wife and, therefore, exceeds the scope of 18 U.S.C. § 3583 and violates his right to due process. As such, he asks us to remand to the district court for modification of the conditions.

The government argues that Lindahl's claims are not ripe as they pertain to his future term of supervised release, and they are moot as to his revoked term. Ripeness and mootness both implicate questions of the court's jurisdiction. *Doe v. Univ. of Mich.*, 78 F.4th 929, 950 (6th Cir. 2023); *Ramsek v. Beshear*, 989 F.3d 494, 499 (6th Cir. 2021). And, while the government raised neither issue in the district court, we may resolve jurisdictional questions raised for the first time on appeal. *See FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1988). Lindahl did not file a reply brief in response to the government's ripeness and mootness challenges and has arguably forfeited any potential arguments in his favor. *See United States v. Hernandez*,

No. 22-5450, 2023 WL 4535505, at *1 (6th Cir. July 13, 2023) ("Hernandez has forfeited any argument that his appeal is not moot by failing to file a reply brief responding to the government's invocation of mootness"); *see also Taylor v. Pilot Corp.*, 955 F.3d 572, 582 (6th Cir. 2020) (Thapar, J., concurring in part) ("Although parties cannot waive arguments *against* jurisdiction, they are more than free to waive (or forfeit) arguments *for* it.") (emphasis in original) (collecting cases). We address the government's justiciability challenges in turn.

*Ripeness*. The government raises the threshold question of whether Lindahl's challenge to two of his standard conditions of supervised release was ripe for the district court's, and now this court's, consideration. The justiciability doctrine of ripeness is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)); *see also United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003) (the ripeness doctrine "focuses on the timing of an action"). The doctrine stems "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). As we have explained, "[t]he ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985); *Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (1997).

In the context of challenges to supervised release conditions, the general rule is that "conditions of supervised release may be ripe for appellate review immediately following their imposition at sentence." *United States v. Lee*, 502 F.3d 447, 449–50 (6th Cir. 2007). However, in certain instances, supervised release conditions may not be ripe for challenge. In particular, when a condition merely has the "potential" to occur, rather than being deemed mandatory, it is likely unripe. For example, in *Lee*, we concluded that the defendant's challenge to supervised release conditions was not ripe where it "implicate[d] only the *potential* use of a penile plethysmograph" and went on to note that "given that the occasion may never arise," the "testing is mere conjecture." *Id.* at 450 (emphasis in original). Similarly, in *United States v. Nichols*, 802 F. App'x 172 (6th Cir. 2020), a panel of this court concluded that a defendant's challenge to conditions requiring a polygraph test was unripe where the probation officer had "discretion in imposing the testing." *Id.* at 184; *see also United States v. Massey*, 349 F. App'x 64, 70 (6th Cir. 2009) (concluding that the defendant's challenge to his supervised release conditions was not ripe because under the "same reasoning" as in *Lee*, the tests were "simply two options that [the defendant's] probation officer may choose"—emphasizing that the assessments were "optional").

Conversely, we have held that a defendant's supervised release conditions are generally ripe for review when the conditions are mandatory, and their future application is certain. For example, in *United States v. Zobel*, 696 F.3d 558, 572, 574 (6th Cir. 2012), we distinguished *Lee* and concluded that the defendant's challenge to supervised release conditions was ripe. The distinguishing factor in *Zobel* was that the contested conditions, which "barr[ed] [the defendant] from contacting minors and loitering where minors congregate" and banned him from accessing pornographic material, were not contingent on some future determination. *Id.* at 572. Likewise, in *United States v. Lantz*, we found a challenge to certain special conditions ripe where "[t]he

conditions imposed upon [the defendant]'s release[,]" which included prohibiting the defendant from possessing a computer for recreational purposes and from accessing the internet, "[were] not mere possibilities or options." 443 F. App'x 135, 138–39 (6th Cir. 2011).

The government maintains that Lindahl's request to the district court to modify his newly imposed supervised release conditions was not ripe for the district court's consideration and remains unripe before this court. We agree. On this point, *Massey's* reasoning is instructive. In that case, the government did not raise ripeness in the district court since the defendant had not challenged the terms of his supervised release before the sentencing judge. Nevertheless, the defendant challenged the reasonableness of these conditions on appeal. We declined to address the merits, concluding that his issues were not ripe for review. *See Massey*, 349 F. App'x at 70. Invoking *Lee's* rationale, we noted that any number of circumstances might change during the defendant's imprisonment that could affect whether the conditions requiring use of a plethysmograph and Abel assessment would be operationalized. *Id.* Moreover, given the passage of time set to transpire between sentencing and the onset of supervision, "[i]t would be 'mere conjecture' for the court to try to define the parameters of Massey's future supervised-release conditions." *Id.*

We reinforced this view in *Nichols*. There, the defendant pleaded guilty to receiving and distributing content of minors engaged in sexually explicit conduct. *Nichols*, 802 F. App'x at 174. Because the defendant had a long history of sexually abusing minors, the district court imposed a special condition prescribing "periodic polygraph testing *at the discretion* of [the defendant's] probation officer" to "ensure that [the defendant was] in compliance with the requirements of [his] supervision or treatment program." *Id.* at 176 (emphasis added). The defendant challenged whether this special condition was procedurally and substantively reasonable. *Id.* at 174.

We concluded that his challenge to the special conditions was not ripe for review because "the officer's discretion [meant the defendant] may never actually be subject to the polygraph testing." *Id.* at 184.

Like the special conditions imposed in *Massey* and *Nichols,* Lindahl's standard conditions are optional and thus not ripe for review. Although Standard Condition Nos. 5 and 8—requiring him to live at a residence approved by the probation officer and prohibiting him from communicating or interacting with anyone who is engaged in criminal activity or is a felon—appear to be mandatory at a first glance, the district court explained their discretionary nature. To begin, the plain language of the conditions premises enforcement of their restrictions on a future determination. Indeed, once defense counsel raised the issue during the sentencing phase of the supervised release hearing, the district court explicitly declined to "prejudge" Lindahl's ability to reside with and contact his wife upon release. Instead, it left open the possibility of modification by highlighting that "the way that an individual like Mr. Lindahl or his wife get [the conditions] set aside is by demonstrating compliant clean and sober behavior over an extended period of time." (R. 62, PageID 300). Stated differently, the district court empowered the probation officer to assess the circumstances of Lindahl's and his wife's behavior and drug usage status before deciding whether to apply the conditions' restrictions to Lindahl's interactions and co-habitation with Mrs. Lindahl. On this point, the district court noted: "[A]s I recall Mr. Lindahl's wife is herself a heroin addict, and . . . when both of them are actively using, it's just an accident waiting to happen." (*Id.* at 300). Thus, "if the probation officer thinks that [there is a] need to provide safety for the community, for the offender, restrictions on that sort of thing and the relationship have to be there, the officer has the power and authority and in fact, the mandate to do that." (*Id.*)

Because the district court authorized the probation officer to assess Lindahl's circumstances upon release from custody and determine whether enforcement of the restrictions is necessary, the nature of the conditions and their implementation are potential rather than mandatory. And even though Lindahl's period of imprisonment is shorter than those in *Massey* and *Nichols*, like in those cases, any number of circumstances could change between the time Lindahl's sentence was imposed and when any decision about whether to enforce the challenged conditions occurs. A year from sentencing, Lindahl and his wife may both be clean, sober and compliant with all other terms of supervision. Conversely, one or both may have reverted to serious drug use or may no longer be interested in cohabitating. The speculative nature of what may occur in the future renders the challenge to these conditions unripe for this court's review under *Lee*.

*Mootness*. The government also maintains that Lindahl's appeal is moot with respect to the probation officer's prior enforcement of the standard conditions in the violation petition to the district court. Like ripeness, the question of mootness implicates Article III of the United States Constitution, which provides strict parameters for federal courts in that they may only adjudicate "actual, ongoing controversies." *Mwasaru v. Napolitano*, 619 F.3d 545, 549 (6th Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)); U.S. Const. art. III, § 2. A controversy is considered to be actual and ongoing only when there is a "genuine dispute[] between adverse parties, where the relief requested would have a real impact on the legal interests of those parties." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Thus, "federal courts are prohibited from rendering decisions that do not affect the rights of the litigants." *Thomas v. City of Memphis*, 996 F.3d 318, 323 (6th Cir. 2021) (internal quotations omitted).

Because Article III demands "actual, ongoing controversies" to adjudicate claims, when issues presented by the parties "are no longer live or the parties lack a legally cognizable interest in the outcome, then the case is moot and the court has no jurisdiction." *Libertarian Party of Ohio*, 462 F.3d at 584 (internal quotation marks omitted) (quoting *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979)); *see also United States v. Solano-Rosales*, 781 F.3d 345, 355 (6th Cir. 2015) (internal quotation marks omitted) (quoting *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005)) (explaining that "[a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue."). "Even if a case was not moot in the district court, if it becomes moot on appeal, we must dismiss the case unless 'the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Rosales-Garcia v. Holland*, 322 F.3d 386, 394 (6th Cir. 2003) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997)). The party asserting that a claim is moot carries the heavy burden of demonstrating its mootness. *See Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *see also Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021).

While the briefing is not entirely clear on this point, Lindahl also appears to challenge the probation officer's prior refusal to authorize him to live with his wife under the supervised release standard conditions. Lindahl's attorney learned after the hearing that the probation officer "uses Standard Condition No. 8 to prohibit Mr. Lindahl from calling or communicating with his wife." (Dkt. 20, Page 11). The government maintains that Lindahl's claims are moot as to the probation officer's prior enforcement of the standard conditions because Lindahl's supervised release was revoked, and the violation counts pertaining to Standard Condition Nos. 5 and 8 were dismissed once he admitted responsibility to the remaining violations. To the extent Lindahl makes any such

challenge, we find the government's argument persuasive. Here, the district court dismissed the only supervised release violation premised on conduct prohibited by Standard Condition Nos. 5 and 8—Lindahl's failure to live at his approved residence and to notify his probation officer of a change in residency. Then, after receiving Lindahl's admission of responsibility for other unrelated violations, the court revoked the term of supervised release along with all the conditions—including those at issue here. At the moment of revocation, the district court lost the ability to review Lindhal's claims, as there was no longer a "live" case or controversy before the court: the claims became moot and cannot be resurrected here.

Because Lindahl's claims are alternately unripe and moot, we do not reach the merits of his arguments. However, his claims are not eternally foreclosed from future review. If Lindahl's claims ripen, he may move for the district court to modify his conditions of supervised release pursuant to 18 U.S.C. § 3583(e). *See Lee*, 502 F.3d at 451. The district court may then assess the merits of his claims, and if necessary, we can review the decision on appeal.

## IV.

For the reasons set forth above, we **AFFIRM**.